**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

**MARY LYNN SHUMATE**,
                                Plaintiff

v.

                                                    CIVIL ACTION NO. 6:23-CV-32

**CITY OF LYNCHBURG, et al.**
                                Defendants

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Defendants state the following in support of their Motion to Dismiss.

**INTRODUCTION**

Defendants have moved for dismissal of the Complaint against them pursuant to

Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Among

numerous deficiencies, plaintiff has failed to exhaust administrative remedies, has

invoked a state whistleblower statute which is not applicable, has named parties that

are immune, and has alleged claims which seek duplicative remedies.

**ARGUMENT AND AUTHORITY**

**1.     Plaintiff has failed to exhaust the administrative remedies that are the**
**prerequisite to filing an action based on Title VII.**

        **(a)     Plaintiff failed to present her claim of constructive discharge and**
**other claims to the EEOC.**

        Counts I and II allege sex discrimination and retaliation, respectively, in violation

of Title VII under federal law.  Plaintiff has failed to exhaust the administrative remedies

with the EEOC that are required before she may file suit on those counts. Her

Complaint mentions her "administrative complaint" with the EEOC (Complaint, ¶ 9) but

she does not attach it as an exhibit to the Complaint.   Her actual Charge of

Discrimination with the EEOC is attached hereto as Exhibit 1 to the Declaration of Michelle Jackson, the City's Director of Human Resources.  The Exhibit shows that the Charge was filed with the EEOC on May 26, 2022.  Her Complaint alleges that she received a Notice of Right to File a Civil Action on March 10, 2023 (Complaint, ¶ 9).

The gravamen of plaintiff's Complaint is a claim of constructive discharge.  She alleges that she "was forced to resign, having been constructively discharged" (Complaint, ¶ 112).  The ad damnum to her Complaint seeks damages related to a discharge, including "lost wages and benefits, backpay, frontpay, full reinstatement".  As Exhibit 1 to Ms. Jackson's Declaration shows, plaintiff failed to present that constructive discharge claim to the EEOC as part of her Charge of Discrimination.  In fact, she *could not* have presented such a claim at that time because she was still employed by the City. She alleges that she resigned her employment on January 3, 2023 (Complaint, ¶ 112), more than seven months after filing her Charge.  In addition, her allegations in the Complaint about ballistic vests (¶¶ 24-25) and a helmet ((¶¶ 97-102) were not part of her EEOC Charge.

Title VII of the Civil Rights Act  instructs a complainant, before commencing a Title VII action in court, to file a charge with the EEOC. §2000e–5(e)(1), (f)(1).   The United States Supreme Court has described the EEOC procedure as follows:

> In the event that the EEOC determines there is "n[o] reasonable cause to believe that the charge is true," the Commission is to dismiss the charge and notify the complainant of his or her right to sue in court. 42 U. S. C. §2000e-5(b), f(1); 29 CFR §1601.28. Whether or not the EEOC acts on the charge, a complainant is entitled to a "right-to-sue" notice 180 days after the charge is filed. §2000e-5(f)(1); 29 CFR §1601.28. And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer. §2000e-5(f)(1).

*Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1847 (2019).   The Fourth Circuit has described the importance of the administrative exhaustion requirement:

> An employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process. *See* 42 U.S.C. § 2000e-5(b). The requirement of filing a charge with the EEOC against the party sued serves two principal purposes: "'First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law.'" *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984) (quoting *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969)). The filing of an administrative charge, therefore, "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, the charge itself serves a vital function in the process of remedying an unlawful employment practice.

*Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 406-407 (4th Cir. 2013).   The Court added:

> In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."). If the plaintiff's Title VII claims "'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Chacko*, 429 F.3d at 506 (quoting *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).

711 F.3d at 407-408.   *Also see, Stevens v. Elior Inc.*, 2023 U.S. Dist. LEXIS 70522 *7 (W.D. NC, 2023): "The 'factual allegations made in formal litigation must correspond to those set forth in the administrative charge." quoting *Chacko*, 429 F.3d at 509; *Gurney v. Alleghany Health & Rehab*, 2021 U.S. Dist. LEXIS 53443 *5 (W.D. Va. 2021) (dismissal for failure of EEOC Charge to contain key facts underlying lawsuit.); *Earl v. Norfolk State Univ.*, 2014 U.S. Dist. LEXIS 18583 *27-28 (E.D. Va. 2014) (dismissal for

failure to include claim in EEOC Charge).

Ms. Shumate's failure to present her constructive discharge claim and her claims about vests and helmets to the EEOC dooms her Title VII claims in Counts I and II. Those counts exceed the scope of her EEOC charge and thus are procedurally barred.

**(b)** **Counts I and II are also procedurally barred because plaintiff filed suit before obtaining a Right to Sue letter from the EEOC.**

As described above, the statutory and administrative scheme requires the plaintiff to obtain a Right to Sue letter from the EEOC before filing suit on the Title VII claims. 42 USC § 2000e-5(f)(1). Plaintiff failed to do so. Although her Complaint alleges that that she received a Notice of Right to File a Civil Action on March 10, 2023 (Complaint, ¶ 9), that document attached as Exhibit A to the Complaint was not issued by the EEOC. It rather is a Notice of Right to File a Civil Action issued by the Virginia Attorney General's Office, and is not a substitute for the required EEOC notice.

The Courts have recognized that the EEOC Right to Sue notice and a comparable state notice are not interchangeable. *See, e.g.*, *Moss v. Saja Rest. Grp., LLC*, 2023 U.S. Dist. LEXIS 70055 *32 (W.D. Va. 2023) in which Judge Cullen declined to accept an EEOC Right to Sue notice as interchangeable with a Notice of Right to Sue issued by the Virginia Attorney General's Office. Plaintiff's failure to obtain the EEOC Right to Sue Notice prior to filing the Complaint is another reason why Counts I and II are procedurally barred.

**2.** **The Virginia state law claim of retaliation in Count III must be dismissed for many reasons.**

**(a)** **The City is not an "employer" within the meaning of the statute.**

Count III is based on the statutes contained in Va. Code Title 2.2, Chapter 30.1,

§§ 2.2-3009 *et seq.*, the Fraud and Abuse Whistleblower Protection Act (FAWPA). Section 2.2-3011 bars retaliatory actions by an "employer".  That Chapter contains a specific definitions section, § 2.2-3010.  "Employer" is defined in that section as "a *person* supervising one or more employees, including the employee filing a good faith report, a superior of that supervisor, or an agent of the governmental agency." (emphasis added).  The City as an entity is clearly not covered by that definition. Other sections of the Va. Code do include entities other than individuals within the definition of employer.  For example, in Title 40.1 (Labor and Employment), the definition of employer in § 40.1-2 specifically includes individual persons as well as entities such as corporations. As another example, in the Minimum Wage Act, Va. Code § 40.1-28.9 includes individuals and entities, including "the Commonwealth, any of its agencies, institutions, or political subdivisions, and any public body."  The City must thus be dismissed as a defendant in Count III.

**(b)    Because the City must be dismissed as a defendant in Count III, the official capacity claims against the individual defendants must also be dismissed.**

Plaintiff is suing the individual defendants only in Count III, and only in their "official capacity". The Supreme Court has made clear that official capacity suits against individuals are essentially against the governmental entity that employs those persons.

> Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell* v. *New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55  (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Ky. v. Graham*, 473 U.S. 159, 165-166 (1985).  As the defendants have argued in part (a) above, the City cannot be sued as an employer under Va. Code § 2.2-3010.

Accordingly, because the City must be dismissed as a defendant in Count III, the official capacity claims against the individual defendants must also be dismissed.

**(c)      Plaintiff is not a "whistleblower" within the meaning of the FAWBPA.**

Section 2.2-3011 bars retaliatory actions against whistleblowers.  The definitions section of the FAWBPA, § 2.2-3010 defines whistleblower as follows:

> "Whistle blower" means an employee who witnesses or has evidence of wrongdoing or abuse and who makes or demonstrates by clear and convincing evidence that he is about to make a good faith report of, or testifies or is about to testify to, the wrongdoing or abuse to one of the employee's superiors, an agent of the employer, or an appropriate authority. "Whistle blower" includes a citizen of the Commonwealth who witnesses or has evidence of wrongdoing or abuse and who makes or demonstrates by clear and convincing evidence that he is about to make a good faith report of, or testifies or is about to testify to, the wrongdoing or abuse to an appropriate authority.

That Code section also defines "wrongdoing":

> "Wrongdoing" means a violation, which is not of a merely technical or minimal nature, of a federal or state law or regulation, local ordinance, or a formally adopted code of conduct or ethics of a professional organization designed to protect the interests of the public or employee.

As a threshold matter, Count III fails to specify what acts constitute "wrongdoing" as defined by the statute.  She merely alleges that she "continuously reported wrongdoing to her employer." (Complaint ¶ 135).  She further claims she "engaged in multiple protected acts" (Complaint ¶ 135), again without specifying the alleged acts. Such vagueness fails to satisfy the specificity standard for pleading as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Even if the Court were to consider all of the acts of which the plaintiff complains in the Complaint, she fails to state a claim in Count III under the statute because all of the acts are alleged wrongs done *to her.*  She has made no allegations that she alerted

her superiors to any of the types of violations described in the statutory definition of "wrongdoing". The complaints she claims to have made were in no way an effort to protect the interests of other people or the public.

Counsel has located only one court decision applying Virginia law concerning what actions are considering wrongdoing within the scope of the statute. In *Supinger v. Virginia*, 167 F. Supp. 3d 795 (W.D. Va. 2016), this Court dismissed a claim under the FAWBPA because the plaintiff's allegations did not implicate the type of wrongdoing covered by the statute. As in the present case, the former government employee in that case had filed suit against the state alleging Title VII claims of discrimination and retaliation in addition to a whistleblower claim under the FAWBPA. This Court described the requirements to be considered a whistleblower under the statute:

> In order to be a whistle blower under the statute, the employee must report on "wrongdoing or abuse." *Id. at 2.2-3010*. Wrongdoing is defined as "a violation, which is not of a merely technical or minimal nature, of a federal or state law or regulation or a formally adopted code of conduct or ethics of a professional organization designed to protect the interests of the public or employee." *Id.* Abuse is defined as "an employer's or employee's conduct or omissions that result in a substantial misuse, destruction, waste, or loss of funds or resources belonging to or derived from federal, state, or local government sources." *Id.* No Virginia court has interpreted or construed this provision of the statute.

*Id.* at 819. As in the present case, the plaintiff had complained of numerous acts of alleged wrongdoing. For one set of complaints, this Court concluded that none constituted a "substantial misuse, destruction, waste, or loss of funds or resources belonging to or derived from federal, state or local government sources." *Id.* As to another set of the plaintiff's complaints about the actions of other employees, the Court concluded that "A complaint about one employee's disruptive effect on the effective

operation of the office does not constitute an allegation of either wrongdoing or abuse within the meaning of the statute." *Id.* at 820.  The plaintiff's claims under the statute were dismissed.

Judge O'Grady in the Eastern District of Virginia recently cited with approval this Court's conclusion in its *Supinger* decision that an employee's "generalized grievances about the workplace" are not protected. *Gryder v. Mac*, 2022 U.S. Dist. LEXIS 237707, *8 (E.D. Va. 2022).

Although the Virginia state courts have not yet clarified the scope of this relatively new statute, the courts in other states that have enacted whistleblower protection statutes have provided helpful guidance.   The ALR annotation *"What Constitutes Activity of Public or State Employee Protected Under State Whistleblower Protection Statute Covering Employee's "Report," "Disclosure," "Notification," or the Like of Wrongdoing -- Nature of Activity Reported"* collects cases from a variety of states with statutes similar to Virginia's.   37 A.L.R. 6th 137. As those decisions demonstrate, whistleblower statutes are designed to protect employees who alert authorities to wrongful acts that harm the interests of other people or the public, rather than harming the complaining employee alone. The protected activity examined by those courts typically involves employees reporting criminal violations, fraud, safety violations or similar violations that constitute the wrongdoing or abuse.   Ms. Shumate's allegations fail to fall within the category of wrongdoing or abuse protected by the statute.

**(d)** **The Complaint makes no allegations of any wrongdoing by City Manager Wynter Benda.**

Count III states that it includes City Manager Wynter Benda as a defendant.  As plaintiff has alleged in her Complaint, the actions which she claims were retaliatory were

all taken either by or under the supervision of Fire Chief Greg Wormser. The Complaint makes no allegations of any wrongdoing by Wynter Benda.  Count III thus fails to state a claim upon which relief can be granted against him.

**(e)** **Plaintiff failed to exhaust her state or local grievance procedure remedies.**

Va. Code § 2.2-3012, a part of the FAWPA, provides, in pertinent part:

**Application of state or local grievance procedure; other remedies**.

A.  Any whistle blower covered by the state grievance procedure (§ 2.2-3000 et seq.) or a local grievance procedure established under § 15.2-1506 may initiate a grievance alleging retaliation and requesting relief through that procedure.

Although the statute uses the word "may", its inclusion in the FAWPA indicates a strong legislative intent for whistleblowers to use such a grievance procedure prior to resorting to the courts for redress.  In this case, the City has established a detailed employee grievance procedure that complies with the referenced Va. Code § 15.2-1506.  See ¶ 4 in Declaration of Michelle Jackson. The Grievance Procedure is also publicly available at:  2020_Employment_Policies_and_Procedures_1_6_21.pdf (lynchburgva.gov).  The plaintiff complains of her demotion (Complaint ¶ 103), but declined to pursue her remedies for the demotion under the City's grievance procedure despite having been reminded of those remedies. Jackson Declaration ¶ 4.  The Grievance Procedure offered her several appeal steps, including a final hearing with a five-member Appeal Board consisting of three citizen members and two other City employees.  Rather than attempting to resolve her complaints through the process designed precisely for that purpose, she chose to take legal action through the EEOC and this Court.  She should

not be permitted to waste judicial resources when an alternative remedy was available to her.

**(f)     The Court should decline to exercise supplemental jurisdiction for the state law claim upon dismissal of the Title VII claims.**

Plaintiff invokes supplemental jurisdiction for the state law claim in Count III pursuant to 28 U.S.C. § 1367. (Complaint ¶ 2).  Subsection (c) of that Code section provides that the Court may decline to exercise supplemental jurisdiction if the federal claims are dismissed.  The prevailing view is that a court ""should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 246 (5th Cir. 2022). *Also see*, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  In the present case, if the Court declines to dismiss Count III, there is no compelling or unusual reason for the Court to keep jurisdiction of that state claim.  The Virginia statute which the plaintiff invokes is relatively new, and there have been few state court decisions construing its definitions and other sections.  Those should be matters left to the state court.

**(g)     Plaintiff seeks an impermissible double recovery for retaliation.**

In both counts II and III, plaintiff seeks a recovery for the same alleged acts of retaliation.  As the Fourth Circuit has held, there is a "widely accepted prohibition on duplicative damages." *Gordon v. Pete's Auto Serv. of Denbigh*, 637 F.3d 454, 460 (4th Cir. 2011).  The Court explained:

. . . [the plaintiff] may not receive a double recovery under different legal theories for the same injury. *See Martin v. Harris*, 560 F.3d 210, 221 (4th Cir. 2009) ("[T]here must be no duplication in the final award . . . ."); *see also Specialty Beverages, LLC v. Pabst Brewing Co.*, 537 F.3d 1165, 1180 n.12 (10th Cir. 2008); *Junker v. Eddings*, 396 F.3d 1359, 1368 (Fed. Cir. 2005); *Wilkins v. Peninsula Motor Cars, Inc.*, 266 Va. 558, 587 S.E.2d 581, 583 (Va. 2003) ("[W]hen the claims, duties, and injuries are the same, duplicative recovery is barred.").

637 F.3d at 460.  The plaintiff thus cannot recover for the alleged retaliation she claims in both Counts II and III.

**(h)      The defendants are protected by sovereign immunity.**

The doctrine of sovereign immunity is "alive and well in Virginia" and protects municipalities from liability arising from the exercise of governmental functions.  *Niese v. City of Alexandria*, 264 Va. 230, 238 (2002).

[A] municipality is clothed with two-fold functions; one governmental, and the other private or proprietary. In the performance of a governmental function, the municipality acts as an agency of the state to enable it to better govern that portion of its people residing within its corporate limits. To this end there is delegated to, or imposed upon, a municipality, by the charter of its creation, powers and duties to be performed exclusively for the public. In the exercise of these governmental powers a municipal corporation is held to be exempt from liability for its failure to exercise them, and for the exercise of them in a negligent or improper manner. This immunity is based on the theory that the sovereign can not [sic] be sued without its consent, and that a designated agency of the sovereign is likewise immune.

*Id.*

In the present case, the allegations of the Complaint make clear that all the actions of the defendants of which plaintiff complains are discretionary governmental functions.   A governmental function involves "the exercise of an entity's political, discretionary, or legislative authority." *Carter v. Chesterfield County Health Comm'n*, 259 Va. 588, 591, 527 S.E.2d 783, 785 (2000) (citing *First Va. Bank-Colonial v. Baker*,

225 Va. 72, 301 S.E.2d 8 (1983)). The Virginia Supreme Court "has consistently held that when a municipality plans, designs, regulates or provides a service for the common good, it performs a governmental function."  *City of Chesapeake v. Cunningham*, 268 Va. 624, 634 (2004).  Maintaining a fire department, including integral administrative activities such as managing its human resources by making disciplinary decisions, are clearly a part of the city's governmental functions.  Sovereign immunity bars Count III.

## CONCLUSION

For all the reasons stated herein, plaintiff fails to state a claim upon which relief can be granted.

WHEREFORE, the defendants request the Court to dismiss the Complaint and award them their costs.

> **CITY OF LYNCHBURG**
> **GREGORY WORMSER**
> **WYNTER BENDA**
>
>      /s/  John E. Falcone
>              Counsel

John E. Falcone (Va. Bar #17879)
jfalcone@pldrlaw.com
Luke J. Malloy, III (VSB # 94877)
lmalloy@pldrlaw.com
PETTY, LIVINGSTON, DAWSON & RICHARDS
P.O. Box 1080
Lynchburg, VA  24505
Phone:  434-846-2768  Fax:  434-847-0141
counsel for defendants

## CERTIFICATE

I hereby certify that on this 29th day of June, 2023 I electronically filed the foregoing Memorandum with the Clerk of the Court using the CM/ECF system, which will serve all other counsel via e-mail.

_/s/  John E. Falcone_____
Counsel for Defendants

John E. Falcone (Va. Bar #17879)
PETTY, LIVINGSTON, DAWSON & RICHARDS
P.O. Box 1080
Lynchburg, VA  24505
Phone:  434-846-2768
Fax:  434-847-0141
jfalcone@pldrlaw.com