CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/5/2023
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MARY LYNN SHUMATE,<br><br>         *Plaintiff*,<br><br>v.<br><br>CITY OF LYNCHBURG, *et al.*,<br><br>         *Defendants*. | CASE NO. 6:23-cv-00032<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>JUDGE NORMAN K. MOON |

  This case comes to the Court on Defendants' motion to dismiss for failure to state a claim. Plaintiff Mary Lynn Shumate alleges, in Count I, that the City of Lynchburg violated Title VII of the Civil Rights Act of 1964 by creating and permitting a work environment to exist that was discriminatory and hostile to female employees.  In Count II, she contends that the City retaliated against her—in contravention of Title VII—for reporting that gender discrimination. Finally, Plaintiff pleads, in Count III, that the City of Lynchburg and Defendants Gregory Wormser (Fire Chief) and Wynter Benda (City Manager), in their official capacities, violated Virginia's Fraud and Abuse Whistle Blower Protection Act. The Court will deny Defendants' motion to dismiss Counts I and II. But the Court will grant Defendants' motion to dismiss Count III, determining that Defendants are shielded by sovereign immunity.

## BACKGROUND

  Plaintiff served as a firefighter for the City of Lynchburg between August 2007 and January 2023. *Id.* ¶¶ 10–11, 112. During that time, she alleges (1) that she experienced discriminatory and disparate treatment from her superiors; (2) that Defendants opened a

retaliatory investigation into her conduct, resulting in her demotion; and (3) that she was constructively discharged due to harassment.

Plaintiff first claims to have been subjected to repeated discrimination. She contends that she was required "to submit a doctor's note each time she took a sick day," while "[none] of [her] male coworkers were required" to do so. *Id.* ¶ 19. At the same time, her male supervisor "made it apparent that he did not believe women should [sic] in the fire service." *Id.* ¶ 17. For instance, she charges that her supervisor said, "there are no females in this department that can pull me out of a burning building." *Id.* ¶ 18. Allegedly due to her supervisor's beliefs about women firefighters, Plaintiff attests that he denied her training opportunities that were regularly granted to her male coworkers. *Id.* ¶ 20. These events resulted in Plaintiff being transferred multiple times. *See id.* ¶¶ 15–16, 22.

Eventually, Plaintiff reported these—and other[1]—alleged affronts to the City of Lynchburg's Director of Human Resources. *Id.* ¶ 39. In response, the City, through an investigator, launched an inquiry. *Id.* ¶ 41. After multiple interviews, the investigator concluded that Plaintiff's complaint was "'unfounded.'" *Id.* ¶ 47.

The City then "initiated an investigation of Plaintiff." *Id.* ¶ 48. Plaintiff notes that the investigation was supposedly opened in response to a conversation during which "Plaintiff had discussed the sexual orientation of another unidentified employee with a subordinate employee." *Id.* ¶ 54. Plaintiff avers that this conversation was taken out of context, *id.* ¶ 49, and that the investigation was a "sham." *Id.* ¶ 53.

---

[1] *See id.* ¶¶ 24–25 (complaining about an ill-fitting "ballistic vest[]"); *id.* ¶¶ 30–31, 37 (noting that her leave requests were repeatedly denied).

2

Nevertheless, the City demoted Plaintiff, resulting in a reduction in Plaintiff's salary. *Id.* ¶¶ 73, 94. In its decision, the City stated that "Plaintiff had violated policies against 'Workplace Violence' by 'verbally harass[ing] [City] employees,' and 'sexually harassing an employee.'" *Id.* ¶ 76. Plaintiff, for her part, contends that the "accusations against [her] were false and/or grossly overblown in order to provide pretext for her demotion." *Id.* ¶ 79. She also points to various other deficiencies with her demotion. *See id.* ¶¶ 78–86.

On January 3, 2023—roughly a year after her demotion, Plaintiff resigned. *Id.* ¶ 112. Citing various allegations, *id.* ¶¶ 103–11, Plaintiff claims to have been constructively discharged. *Id.* ¶ 112. She then brought this lawsuit.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say

Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

## ANALYSIS

**I.     The Court will deny Defendants' motion to dismiss Counts I and II as Plaintiff has exhausted her administrative remedies.**

Counts I and II of Plaintiff's complaint allege sex discrimination and retaliation, respectively, in violation of Title VII of the Civil Rights Act of 1964. Defendants contend that these claims must be dismissed because Plaintiff "failed to exhaust her administrative remedies with the" Equal Employment Opportunity Commission ("EEOC") "[as] required." Dkt. 3 at 1. Defendants' administrative exhaustion argument has two subparts: (1) Plaintiff failed to present some of her claims to the EEOC, resulting in them being procedurally barred, and (2) Plaintiff filed this lawsuit before obtaining a Right to Sue letter from the federal government, rendering her Title VII claims premature. *Id.* at 1–4. Neither of these arguments are persuasive.

> a.  *Even if Plaintiff failed to submit her constructive discharge claim to the EEOC, her Title VII claims are not procedurally barred.*

Defendants first argue that Counts I and II of Plaintiff's complaint are procedurally barred because they exceed the scope of the allegations in her EEOC charge. *Id.* at 1. But Defendants take an overly rigid view of administrative exhaustion.

It is true that administrative exhaustion is a vital feature of the Title VII statutory scheme. As a general rule, an "employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) (citing 42 U.S.C. § 2000e-5(b)). The Fourth Circuit has explained:

> The requirement of filing a charge with the EEOC against the party sued serves two principal purposes: "'*First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law.*'" The filing of an administrative charge, therefore, "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit."

*Balas*, 711 F.3d at 406–07 (emphasis added) (internal citations omitted).

Given the importance of Title VII's administrative process for giving defendants notice of the charges against them, "the factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). For instance, a "claim will … typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Id.* (citation omitted).

But while a plaintiff's complaint must correspond to her administrative charge, those two documents need not be identical: it is sufficient if the factual allegations in a plaintiff's "judicial complaint are reasonably related to her EEOC charge." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000) (citing *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482 (4th Cir. 1981)). Accordingly, "a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission.'" *Hill v. Western Electric Co.*, 672 F.2d 381, 390 n.6 (4th Cir. 1982) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)), *cert. denied*, 459 U.S. 981 (1982).

In the present matter, Defendants insist that Plaintiff's "constructive discharge claim is the [most important allegation] of the Complaint" and that her Title VII claims are, thus, procedurally barred—in their entirety—because she failed to mention constructive discharge in her EEOC filing. Dkt. 10 at 1. Critically, Defendants do not challenge that Plaintiff has otherwise

5

stated plausible discrimination and retaliation claims under Title VII.

Defendants' administrative exhaustion argument is unpersuasive. It does not appear that Plaintiff's constructive discharge claim is, as Defendants half-heartedly contend, the "gravamen" of her complaint. Dkt. 10 at 1.[2] Indeed, Plaintiff's Title VII counts do not hinge on her reported constructive discharge. Rather, they focus on her work within "a culture that discriminated against women and rewarded such behavior." Dkt. 1 ¶¶ 116–17, 126, 128. And those claims "are reasonably related to [the allegations in] her EEOC charge." *Smith*, 202 F.3d at 247–48 (citation omitted); *see also* Dkt. 9 (Ex. A); Dkt. 1. Therefore, her Title VII counts alleging discrimination and retaliation should be allowed to proceed; she has exhausted her remedies as to those claims. *Cf. Chacko*, 429 F.3d at 509 (noting that an EEOC charge "plays a substantial role in focusing the formal litigation it precedes").[3]

  b. *Plaintiff's Title VII claims are also not premature.*

Defendants next protest that Plaintiff filed this lawsuit before obtaining a Right to Sue letter from the EEOC. They insist this renders her Title VII claims premature. Defendants'

---

[2] At the motion hearing on August 23, 2023, *see* Dkt. 12, Defense counsel acknowledged that Plaintiff's constructive discharge allegation was a "throwaway sort of thing in the complaint."

[3] It is unclear what—if any—role Plaintiff's constructive discharge allegation is playing in her complaint. Nonetheless, Plaintiff has not alleged a plausible claim of constructive discharge. The Fourth Circuit has determined that "a constructive discharge occurs when 'an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" *Bristow v. The Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) (citations omitted). To satisfy this test at the motion to dismiss stage, a plaintiff must allege: (1) the deliberateness of the employer's action—i.e., that the employer was attempting to force the employee to resign; and (2) the intolerableness of the working conditions. *Id.* Plaintiff has not alleged either element. True, Plaintiff has averred that she suffered discrimination. But it is not clear that this alleged discrimination was designed to force her to quit. Moreover, Plaintiff has alleged few facts between the end of May 2022 and January 2023 to support the proposition that Plaintiff's work environment had become intolerable. Thus, Plaintiff's constructive discharge claim must be dismissed. Notably, this determination does not have any bearing on Plaintiff's underlying Title VII claims.

argument, however, is contrary to Fourth Circuit precedent. The Fourth Circuit has held: "Where … a right to sue letter is filed in the district court prior to dismissal and there is no showing that early filing of the complaint has interfered with the administrative function or prejudiced the defendants, the complaint should not be dismissed as premature." *Mabrey v. Roy Whites Florist, Inc.*, No. 87-3523, 1987 WL 37863, at *1 (4th Cir. July 7, 1987) (per curiam) (unpublished table decision).

In the present case, it is true that Plaintiff filed her complaint on June 7, 2023, before receiving her right to sue letter. *See* Dkt. 9 at 3–4. But she received the letter less than a month later on June 23, 2023. *Id.* In fact, Plaintiff received the right to sue letter *before* Defendants filed their motion to dismiss on June 29, 2023. It follows that Defendants have not suffered prejudice from this suit being filed prematurely. In sum, the Court does not find Counts I or II procedurally barred; the Court will, accordingly, deny Defendants' motion to dismiss Count I and Count II.

## II. The Court will grant Defendants' motion to dismiss Count III, determining that Defendants are protected by sovereign immunity.

Plaintiff consents to the dismissal of the City of Lynchburg from Count III.[4] Dkt. 9 at 4. Still, she maintains that she was "retaliated against" by Defendants Wormser and Benda—in violation of Virginia's Fraud and Abuse Whistle Blower Protection Act ("the Act")—for "continuously report[ing] 'wrongdoing' to her employer." Dkt. 1 ¶¶ 135, 137. In response, Defendants put forward a variety of arguments, including that they are entitled to sovereign immunity. Concluding that sovereign immunity shields Defendants from Plaintiff's state law claim, the Court will dismiss the City of Lynchburg, Defendant Wynter Benda, and Defendant

---

[4] Since the parties agree that the City of Lynchburg should be dismissed as a defendant in Count III, *see* Dkt. 3 at 5; Dkt. 9 at 4, the Court will grant Defendants' motion to dismiss the City from Count III.

Gregory Wormser from Count III.

In Virginia, municipalities are granted a limited form of sovereign immunity. "Under longstanding principles, sovereign immunity protects municipalities from tort liability arising from governmental functions, but not proprietary functions." *Massenburg v. City of Petersburg*, 836 S.E.2d 391, 395 (Va. 2019) (citing *City of Chesapeake v. Cunningham*, 604 S.E.2d 420, 426 (Va. 2004)). "A municipality engages in a governmental function when it exercises powers and duties exclusively for the public welfare, effectively acting 'as an agency of the state to enable it to better govern that portion of its people residing within its corporate limits.'" *Massenburg*, 836 S.E.2d at 395 (quoting *Hoggard v. City of Richmond*, 200 S.E. 610, 611 (Va. 1939)). Proprietary functions, on the other hand, "involve the municipality's exercise of its powers and privileges primarily for its own benefit." *Massenburg*, 836 S.E.2d at 395 (citations omitted).

Defendants contend that they "are protected by sovereign immunity" because "[m]aintaining a fire department, including … managing its human resources by making disciplinary decisions, are clearly a part of the city's governmental functions." Dkt. 3 at 11–12 (citing *City of Chesapeake v. Cunningham*, 604 S.E.2d 420, 426–27 (Va. 2004)). Plaintiff responds, citing *Baka v. City of Norfolk, Virginia*, No. 2:21-CV-419, 2022 WL 757218 (E.D. Va. Mar. 11, 2022), that the employment decisions of a fire department are best characterized as proprietary functions. *See id.* at *6.

Defendants have the better argument. The Supreme Court of Virginia has previously determined that the "operation of a fire department is a governmental function." *Massenburg*, 836 S.E.2d at 396 (citing *Hoggard*, 200 S.E. at 614). In addition, the Fourth Circuit has concluded—albeit in reference to a different statute—that "hiring, training, and supervision practices are [also] governmental functions." *Lizzi v. Alexander*, 255 F.3d 128, 133 (4th Cir.

8

2001) (citing *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997)), *overruled in part on other grounds by Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003). This Fourth Circuit decision aligns with the Supreme Court of Virginia's opinion that the retention of "an individual police officer is an integral part of the governmental function of maintaining a police force." *Niese v. City of Alexandria*, 564 S.E.2d 127, 133 (Va. 2002). Together, these opinions recognize that employment decisions are critical to the effective operation of any government office, but particularly emergency services. Maintaining a disciplined, professional workforce ensures that emergency situations are handled safely and efficiently. Employment decisions, including employee discipline, are not "too remote from the public interest and welfare to constitute a government function," at least in the context of the fire department. *Cf. Baka*, 2022 WL 757218, at *6. The Court, therefore, determines that the City of Lynchburg is protected by sovereign immunity.

Yet, this determination does not end the inquiry: just because the City of Lynchburg has immunity does not mean that the individual Defendants, in their official capacities, Dkt. 1 ¶ 7, do as well.[5] To be sure, it is normally the case that "an official-capacity suit is … to be treated as a suit against the" government and, thus, barred by sovereign immunity. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citation omitted). But under Virginia law, municipal employees are only "eligible for the protection afforded by the doctrine" of sovereign immunity "in a proper case." *Messina v. Burden*, 321 S.E.2d 657, 663 (Va. 1984). To that end, Virginia law recognizes a four-factor test for determining if a case is "proper":

> (1) the nature of the function performed by the employee, (2) the extent of the state's interest and involvement in the function, (3) the degree of control and direction exercised

---

[5] Recall that both parties consented to the dismissal of the City of Lynchburg. *See* Dkt. 3 at 5; Dkt. 9 at 4. Accordingly, it only matters whether the individual Defendants are entitled to sovereign immunity.

9

>by the state over the employee, and (4) whether the act complained of involved the use of judgment and discretion.

*Shaffer v. City of Hampton, Va.*, 780 F. Supp. 342, 344 (E.D. Va. 1991) (citation omitted); *see also Messina*, 321 S.E.2d at 663 (noting that "in applying the *James* test to employees of other immune governmental entities, the word 'state' should be deleted and the proper description of the governmental entity substituted").

Here, all four factors favor granting the individual Defendants sovereign immunity. First, both Gregory Wormser and Wynter Benda—as fire chief and city manager, respectively—occupy high-level management positions within city government. *See* Dkt. 1 ¶ 7. Indeed, their positions are integral to the maintenance of Lynchburg and its fire department. Second, the City has a strong interest in how Defendants Wormser and Benda complete their jobs. If they succeed, the City will likely prosper. Conversely, if they fail, the City might flounder. Third, the City exercises little control over the individual Defendants. Instead, as fire chief and city manager, the individual Defendants have wide latitude to act for the benefit of the City. Finally, the decision about whether to demote Plaintiff involved the exercise of discretion. Defendants had to decide whether to punish her for violating City policies. *Id.* ¶ 75. In sum, both Defendant Wormser and Defendant Benda should share in the City of Lynchburg's immunity.[6]

---

[6] This holding does not mean that individuals, like Plaintiff, are unable to take advantage of Virginia's Fraud and Abuse Whistle Blower Protection Act—a statute that clearly "purports to offer relief for employees of [government] agencies." Dkt. 9 at 5. Indeed, the Act waives sovereign immunity in state court. *See* Va. Code Ann. § 2.2-3011(D) ("In addition to the remedies provided in § 2.2-3012, any whistle blower may bring a civil action for violation of this section in the circuit court of the jurisdiction where the whistle blower is employed."). The Court's holding merely acknowledges that the Act does not waive sovereign immunity in federal court. The Supreme Court has routinely held that "a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court." *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)). So, as Virginia has not clearly consented to lawsuits in federal court, federal court is an improper venue for claims under Virginia's Fraud and Abuse Whistle Blower Protection Act.

In conclusion, the Court will dismiss the City of Lynchburg and Defendants Wynter Benda and Gregory Wormser from Count III.[7]

## CONCLUSION

For the above reasons, Defendants' motion to dismiss is **DENIED** as to Counts I and II. Dkt. 2. But Defendants' motion to dismiss Count III is **GRANTED**. *Id.*

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this 5th day of September, 2023.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

Individuals like Plaintiff must pursue their claims in state court.

[7] The Court notes that Defendants made various other arguments in support of their motion to dismiss Plaintiff's state law claim. But as the Court holds that all the Defendants are protected by sovereign immunity, it will not address those arguments.

11