CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/7/2024
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| MARY LYNN SHUMATE,<br><br>        *Plaintiff*,<br>v.<br><br>CITY OF LYNCHBURG, *et al.*,<br><br>        *Defendants*. | CASE NO. 6:23-cv-00032<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>JUDGE NORMAN K. MOON |

   This case comes to the Court on Defendants' motion for summary judgment. Previously, the Court dismissed Count III of Plaintiff's complaint for failure to state a claim upon which relief can be granted, but at the same time, it allowed Counts I and II to go forward. Now, Defendants—the City of Lynchburg, Lynchburg's fire chief, and Lynchburg's city manager (hereinafter "Defendants" or "the City of Lynchburg")—seek summary judgment on Counts I and II. Plaintiff Mary Lynn Shumate alleges, in Count I, that the City of Lynchburg violated Title VII of the Civil Rights Act of 1964 by creating and permitting a work environment to exist that was discriminatory and hostile to female employees. Meanwhile, in Count II, she contends that the City retaliated against her for reporting that gender discrimination. For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.

## BACKGROUND

   Plaintiff Mary Lynn Shumate served as a firefighter for the City of Lynchburg between August 2007 and January 2022. Dkt. 1 ¶¶ 10–11; Dkt. 27 (Ex. 1) at 5:14–19. During that time,

she alleges (1) that she experienced discriminatory treatment from her superiors[1] and (2) that Defendants opened a retaliatory investigation into her conduct, resulting in her demotion.

In the summer of 2021, Plaintiff reported a "hostile work environment" to her Lynchburg Fire Department supervisor,[2] and shortly after, she followed up on her report, submitting "a written letter of formal complaint [to the City of Lynchburg's human resources department] concerning a hostile/bullying work environment within the Lynchburg Fire Department." Dkt. 31 (Ex. 2). Defendants, for their part, claim that the "gravamen of [Plaintiff's] complaints [to the City] … did not focus on treatment related to her gender." Dkt. 27 at 12. But this is disputed. Plaintiff, in her deposition, contends that her 2021 complaint was a response to her "being discriminated [against] because [she] was a female." Dkt. 27 (Ex. 1) at 69:17–70:4. And there are at least some statements in the record to support her contention. *Id.*; *see also* Dkt. 27 (Ex. 1) (Shumate Deposition Ex. 3) at 50 (Plaintiff, complaining that Battalion Chief M. Reeves would "always assign[] [her] to the medic unit … [while] the other Master Firefighters who were male would be assigned to an Engine").

Regardless, the City of Lynchburg "engage[d] outside investigator Randy Trent to investigate her complaint. Trent is a retired Captain from the Lynchburg Police Department with extensive experience in investigations." Dkt. 31 (Ex. 1) at 2. As a part of his investigation, Trent reviewed a written submission by Plaintiff, Dkt. 27 (Ex. 1) (Shumate Deposition Ex. 3) at 46–53,

---

[1] As discussed below, Plaintiff identifies no facts to support her claim of discrimination.

[2] Dkt. 31 (Ex. 1) at 2 (cleaned up); *see also* Dkt. 27 (Ex. 3) at 14:9–19 ("[Plaintiff] felt like she was being treated differently than others.").

and interviewed Plaintiff, Dkt. 27 (Ex. 1) at 69:6–70:9.[3] He ultimately concluded that her "complaints were not founded. [And s]he was notified of that conclusion … on November 10, 2021." Dkt. 31 (Ex. 1) at 3.

Around the same time, an investigation was initiated into allegedly offensive conduct by Plaintiff. The investigation began after another firefighter complained on October 6, 2021:

> Chief Williams, on October 5, 2021 around approximately 0900. [sic.] I was having a conversation with Captain Jennifer Collins and Firefighter Casey Kilgore in Captain Collins [sic.] office at Fire Administration. Firefighter C Kilgore stated she was informed about a situation at Fire Station 8 involving Master Firefighter Mary Shumate. This situation is reported as follows: 'Master Firefighter Shumate had a conversation with Firefighter Chris Mabes stating that if [SW's][4] homosexuality bothered him or was offensive or if he did anything that made him (Mabes) feel uncomfortable, that he (Mabes) was instructed to inform her (Shumate).
>
> As an Officer in this department, I feel a duty to report this.

Dkt. 31 (Ex. 3). Following this complaint, Plaintiff was informed that an investigation would be conducted "concerning [her] possible violation of the City of Lynchburg's … Harassment policy." Dkt. 27 (Ex. 1) (Shumate Deposition Ex. 5).

The City hired "retired Virginia State Police Investigator Randy Campbell … to investigate the matter." Dkt. 31 (Ex. 1) at 3. As a part of his investigation, Campbell interviewed fourteen witnesses, including Plaintiff. *See* Dkt. 31 (Ex. 5) at 000749–50. Of particular importance is the testimony of Chris Mabes—the firefighter to whom Plaintiff supposedly made the discriminatory comment. He told Campbell:

---

[3] It is unclear from the record what else Trent did as a part of his investigation. Yet, at her deposition, Plaintiff could not identify any deficiency with Trent's investigation. *See* Dkt. 27 (Ex. 1) at 51:23–52:3.

[4] In order to avoid discussion of a non-party's sexual orientation in the public record and because the individual's identity is not material to the motion at hand, the Court will refer to this firefighter by their initials.

> Mary was filling in that day; [SW] was coming out of recruit school, he wasn't online yet, he was coming over. It's pretty well known that he's gay, which neither me nor John Bowling has any problem with. Mary made the comment in the hallway, she was talking to Warren Jamerson, Captain on B Shift, she was going on about how she was going to protect her guys, and that we would need protection from him because he was gay.
>
> I got pretty upset about it. I continued down the hall and John Bowling was in the kitchen, and he looked over at me and said, "What the fuck is she talking about?" I was like, "Dude, I don't know. I can't believe that." Warren responded back to her, "Oh, people are going to think that's homophobic and all, but that's not homophobic, that's just taking care of people." Mary came into the kitchen where we were and just kept going on about it; that she was going to stand up for us, that we needed protection from [SW]. That's so funny, John and I are both big boys, we can take care of ourselves. Like I said, she kept going on about it, kept saying we need protection and that's when I looked at her and said, "I don't need any protection from you, and it's the exact same scenario." She's a woman so what's the difference in what she's trying to say? She's a straight female with orientation toward a man, just the same that a gay person has an attraction toward a man.

*Id.* at 000720–21. Mabes' recollection of events was corroborated by other interviewees. *See generally id.* Yet, when she was interviewed, Plaintiff initially denied making any of these statements. As Randy Campbell stated in his report:

> I asked her if she had made any statements at any time to LFD members regarding SW's homosexuality bothering them, or making them feel uncomfortable, come let you know and you would take care of it? She stated, "No sir."
>
> …
>
> I asked her if she recalled having a conversation with Captain Warren Jamerson on that particular day about the sexual orientation of SW, and that your guys would need protection from him because he was gay? She stated, "Not that I can recall."
>
> I asked her if she recalled Firefighter's John Bowling and Chris Mabes ever stating to her that "we're big boys, we can take care of ourselves, we don't need you to do anything." She stated, "Nope."

*Id.* at 000724 (cleaned up). But later, she appeared to acknowledge the relevant, allegedly offensive statements, saying "I mean, what was said was never meant to be offensive in any way, it was simply that, if there was an issue for them to feel comfortable to come to Captain or I [sic]

4

about it." *Id.* at 000727. Ultimately, at the close of his investigation, Randy Campbell concluded that Plaintiff had violated City policy. *Id.* at 000749.

Accordingly, the Fire Chief decided to demote Plaintiff. Dkt. 31 (Ex. 4). Relying on Randy Campbell's independent report, Dkt. 31 (Ex. 5), the Fire Chief determined that Plaintiff violated City policy in multiple ways:

> As a result of the investigation and my review of Fire Department and City of Lynchburg Policies, the allegations of misconduct are determined to be founded, resulting in violations of the following City of Lynchburg Policies including;
>
> a. Chapter 7 section XI Workplace Violence subsection D-1 which states; *"the City of Lynchburg prohibits any employee from engaging in acts of violence including verbally, physically, or through social media threatening, bullying, intimidating, coercing, harassing, or assaulting an employee, visitor, customer or citizen."* More than one employee has found your behavior to be harassing.
>
> b. Chapter 7 section XI Workplace Violence subsection D-2 which states; *"the City of Lynchburg prohibits any employee from engaging in acts of violence including sexually harassing an employee, visitor, customer, or citizen."* More than one employee had found your behavior to constitute sexual harassment.
>
> c. Chapter 7 section VI Disciplinary Policy subsection M-8i, which states a more serious infraction includes, *"dishonesty, deliberate misrepresentation, falsification, or concealment of a material fact in connection with any official document."* You were not honest during the investigation by offering conflicting statements of the situation.
>
> d. Chapter 7 section VI Disciplinary Policy subsection M-8q, which states a more serious infraction includes, *"sexual, racial, or any other form of harassment."* It is clear to me that you sexually harassed at least one employee.

Dkt. 31 (Ex. 4). Before officially demoting her, the Fire Chief gave Plaintiff the required "Loudermill" notice, granting her the opportunity to "show cause" why she should not be demoted. *Id.* at 000594. However, Plaintiff "presented no information … to change [his] conclusion that the demotion was appropriate." Dkt. 27 (Ex. 7) ¶ 6. Accordingly, Plaintiff was officially demoted on February 22, 2022. *Id.* Plaintiff did not appeal the Fire Chief's decision.[5] Dkt. 31 (Ex. 1) at 4.

---

[5] The parties do not dispute that the City followed the proper procedures in demoting Plaintiff.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable [fact finder] could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

The moving party bears the burden of establishing that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, it must present sufficient evidence such that a reasonable fact finder could find by a preponderance of the evidence for the non-movant. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

## ANALYSIS

In this case, "there is no genuine dispute as to any material fact and [Defendants are, thus,] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As mentioned above, there are two counts remaining in this case: a Title VII discrimination claim (Count I) and a Title VII retaliation claim (Count II). Viewing the evidence in the light most favorable to Plaintiff—the nonmoving party—both fail as a matter of law. As to Count I, Defendants have established that summary judgment is warranted, and Plaintiff has not cited any specific, admissible evidence

demonstrating a factual issue for trial. Meanwhile, as to Count II, Plaintiff has made out a *prima facie* case of Title VII retaliation. However, Defendants have responded with a legitimate and non-retaliatory basis for Plaintiff's demotion, and Plaintiff has not shown "that the [City's] reason [for her demotion] was false and that [retaliation] was the real reason for the challenged conduct." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)). Accordingly, the Court will conclude that "there is no genuine dispute as to any material fact" and award Defendants summary judgment. Fed. R. Civ. P. 56(a).

## I. The Court will award Defendants summary judgment on Plaintiff's Title VII discrimination claim.

"[T]he elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (emphasis added) (citing *White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004)), aff'd sub nom. *Coleman v. Maryland Ct. of Appeals*, 566 U.S. 30 (2012).

Here, notwithstanding the allegations of discrimination in her complaint,[6] Defendants contend that Plaintiff was not treated differently than similarly situated male employees and that,

---

[6] Specifically, in her complaint, Plaintiff contends that she was required "to submit a doctor's note each time she took a sick day," while "[none] of [her] male coworkers were required" to do so. Dkt. 1 ¶ 19. At the same time, her male supervisor supposedly "made it apparent that he did not believe women should [sic] in the fire service." *Id.* ¶ 17. For instance, she charges that her supervisor said, "there are no females in this department that can pull me out of a burning building." *Id.* ¶ 18. Plaintiff further alleges that her supervisor, based on his beliefs about women firefighters, denied her training opportunities that were regularly granted to her male coworkers. *Id.* ¶ 20. Plaintiff contends that these events resulted in Plaintiff being transferred multiple times. *See id.* ¶¶ 15-16, 22. In short, Plaintiff posits that these alleged affronts amounted to discrimination.

7

as a result, Plaintiff cannot make out a *prima facie* case of Title VII sex discrimination. *See generally* Dkt. 27. Citing to the record, they undermine each of Plaintiff's allegations of discrimination. *Id.* at 2–7. For instance, Defendants point to portions of her deposition where, contrary to her complaint, Plaintiff admits that she was "not singled out as the only person required to have [a] doctor's excuse." Dkt. 27 (Ex. 1) at 49:11–50:10. Citing other parts of her deposition, Defendants also claim that "there is no evidence of [Plaintiff's supervisor] making statements about women not belonging in the fire service," Dkt. 27 at 2 (citing Dkt. 27 (Ex. 1) at 57:17–58:13), or that she was denied training opportunities because of her sex. Dkt. 27 (Ex. 1) at 58:14–59:2. In short, Defendants posit that her discrimination claim stems from a mere "feel[ing]" that she was not respected—a proposition that is reflected in her deposition:

> Q: What is the evidence that you were never respected as a female?
> A: *I did not feel like I was respected.*
> Q: Why do you say that?
> A: *I mean that's just how I felt.*
> Q: Are there – is there anything specific you can point to, to show that?
> A: Not at this time, no.

*Id.* at 9:10–20 (emphasis added). But a feeling of disrespect is not a substitute for evidence of discriminatory treatment. Dkt. 27 at 18. In short, Defendants assert that Plaintiff did not face any adverse employment consequence "under circumstance[s] giving rise to an inference of unlawful discrimination." *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004) (citation omitted). It follows that her Title VII discrimination claim fails as a matter of law.

Faced with Defendants' argument, Plaintiff is notably silent. In her response brief, she does not point to *any evidence* indicating a dispute of material fact as to her discrimination claim. Indeed, her only reference to the discrimination claim—Count I—is the conclusory statement: "Ms. Shumate opposes summary judgment on [both Counts I and II]." Dkt. 31 at 2.

This will not do. In their motion for summary judgment, Dkts. 26, 27, Defendants met their burden of establishing that summary judgment is warranted. *Celotex Corp.*, 477 U.S. at 322–23. So, Plaintiff, in response, was tasked with showing that a dispute of material fact exists by "citing to particular parts of materials in the record, information, affidavits or declarations, stipulations ... admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). She has failed this task.[7] And where—as here—a litigant has chosen not to cite any evidence in the record to show a dispute of material fact, the Court has no duty to scour the record to locate evidentiary support on their behalf. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *see also Walker v. Prince George's Cty., Md.*, 575 F.3d 426, 429 n.* (4th Cir. 2009) (citation omitted). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *see also Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022).

Accordingly, the Courts concludes that there is no genuine dispute of material fact as to Plaintiff's Title VII discrimination claim, and the Court will, therefore, award Defendants summary judgment.

**II.      The Court will also award Defendants summary judgment on Plaintiff's Title VII retaliation claim.**

Viewing "the evidence in the light most favorable to" Plaintiff, *Variety Stores, Inc.*, 888 F.3d at 659, Plaintiff's Title VII retaliation claim also fails as a matter of law. Here, there is no direct evidence of retaliation and so Plaintiff has opted to proceed under the *McDonell Douglas* framework. Dkt. 31 at 2–3.

---

[7] The Court has also not identified any evidence which would create a genuine dispute of material fact as to Plaintiff's Title VII discrimination claim.

"The *McDonnell Douglas* framework is a three-step burden-shifting framework used by Title VII plaintiffs who lack direct evidence of retaliatory discrimination." *Foster*, 787 F.3d at 252. At step one, Plaintiff must make out a *prima facie* case of Title VII retaliation. *Id.* In other words, she must show that: (1) she engaged in protected activity; (2) her employer took a materially adverse action against her; and (3) but for the protected activity, the asserted adverse action would not have occurred. *Id.* at 250. If she does so, the onus then shifts to Defendants—at step two—to rebut Plaintiff's *prima facie* case by producing a legitimate and non-retaliatory basis for Plaintiff's demotion. *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). Finally, if Defendants make this showing, at step three, the burden shifts back to Plaintiff to rebut Defendants' evidence by demonstrating that their purported nonretaliatory reasons "were not [Defendants'] true reasons, but were a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Here, Plaintiff has made out a *prima facie* case of Title VII retaliation; Defendants have responded with a legitimate, non-retaliatory basis for Plaintiff's demotion; and Plaintiff has not shown "that the [City's] reason [for her demotion] was false and that [retaliation] was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (4th Cir. 2015) (quoting *Jiminez*, 57 F.3d at 378). Thus, Defendants are entitled to judgment as a matter of law.

    a.   ***There is—at a minimum—a dispute of material fact as to whether Plaintiff has made out a prima facie case of Title VII retaliation.***

Turning to step one of the *McDonnell Douglas* framework, Plaintiff has produced evidence sufficient to satisfy all three prongs of a *prima facie* case of Title VII retaliation. First, there is—at a minimum—a factual dispute as to whether Plaintiff engaged in protected activity. "In the context of element one of a retaliation claim, an employee is protected when [she]

10

opposes 'not only ... employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (quoting *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397 (4th Cir. 2005)). Moreover, protected activity "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

Here, Plaintiff has put forward evidence of a protected activity. In the summer of 2021, Plaintiff reported a "hostile work environment" to her supervisor. Dkt. 31 (Ex. 1) at 2 (cleaned up); *see also* Dkt. 27 (Ex. 3) at 14:9–19 ("[Plaintiff] felt like she was being treated differently than others."). Shortly after, she also filed "a written letter of formal complaint." Dkt. 31 (Ex. 2). Plaintiff, in her deposition, contends that these complaints were a response to her "being discriminated [against] because [she] was a female." Dkt. 27 (Ex. 1) at 69:17–70:4. And there is at least one statement in her briefing to the independent investigator, Randy Trent, that supports her contention. *See, e.g.*, Dkt. 27 (Ex. 1) (Shumate Deposition Ex. 3) at 50 (Plaintiff, complaining that Battalion Chief M. Reeves would "always assign[] [her] to the medic unit … [while] the other Master Firefighters who were male would be assigned to an Engine"). Thus, while Defendants posit that Plaintiff's 2021 "complaint was not based on [] gender [discrimination]," Dkt. 33 at 2, there is enough evidence in the record to at least create a factual dispute as to whether she engaged in a protected activity by reporting sex-based discrimination.

Second, Plaintiff clearly faced an adverse employment consequence. On February 22, 2022, Plaintiff was demoted. Dkt. 27 (Ex. 7) ¶ 6. This fact, taken by itself, is sufficient to

establish that "her employer took a materially adverse action against her"—a point Defendants do not dispute. *Foster*, 787 F.3d at 250.

Finally, Plaintiff can rely on the temporal proximity between her protected activity and her adverse employment consequence to make out the causation element of her *prima facie* case. The Fourth Circuit has repeatedly held that when an adverse employment decision occurs around the same time as a plaintiff's "filing of [a] complaint[, it] gives rise to a sufficient inference of causation to satisfy the *prima facie* requirement" of Title VII. *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) (finding a two-month gap sufficient); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (similar). Here, the investigation into Plaintiff's allegedly homophobic conduct began before she was notified of the outcome of the investigation into her 2021 complaint of a hostile work environment. This timing "gives rise to a sufficient inference of causation to satisfy the *prima facie* requirement." *King*, 328 F.3d at 151. In sum, Plaintiff has established a *prima facie* case of Title VII retaliation.

  **b. *Defendants have responded with a legitimate, non-retaliatory basis for Plaintiff's demotion.***

Since Plaintiff has made out a *prima facie* case of Title VII retaliation, at step two of the *McDonnell Douglas* framework, the onus shifts to Defendants to rebut Plaintiff's *prima facie* case by producing a legitimate and non-retaliatory basis for Plaintiff's demotion. *See Laing*, 703 F.3d at 719. They have done so. Specifically, Defendants have put forward evidence that Plaintiff violated the City of Lynchburg's harassment policy by making offensive comments about a subordinate's homosexuality. *See* Dkt. 33 at 7; Dkt. 31 (Ex. 4); Dkt. 31 (Ex. 5). Such a violation of City policy clearly provides a legitimate, non-retaliatory basis for Plaintiff's demotion—a conclusion that Plaintiff does not dispute. *See generally* Dkt. 31.

> ***c. Plaintiff has cited no evidence tending to show that Defendants' reason for demoting her—i.e., that her comments about a subordinate's homosexuality violated City policy—was pretextual.***

Because Defendants have established a legitimate, non-retaliatory reason for Plaintiff's demotion, the Court now turns to the pretext stage of the *McDonnell Douglas* inquiry. At the pretext stage, Plaintiff must establish "that [Defendants'] reason was false and that [retaliation] was the real reason for the challenged conduct."[8] *Foster*, 787 F.3d at 252 (quoting *Jiminez*, 57 F.3d at 378). In evaluating whether Plaintiff can demonstrate that Defendants' justification was pretextual, the Court is not called upon to judge "whether [Defendants'] reason was wise, fair, or even correct, ultimately." *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 722 (4th Cir. 2002). Rather, if the record shows that Defendants "honestly believed" Plaintiff deserved to be demoted, then pretext is absent, even if Defendants were wrong or mistaken about the underlying facts. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217–18 (4th Cir. 2007).

Here, Plaintiff cannot show "that [Defendants'] reason was false and that [retaliation] was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (citation omitted). At a high level, Plaintiff, *inter alia*,[9] quibbles with cherry-picked statements from the record in an attempt to engineer a factual dispute as to "[w]hether she stated anything offensive to violate the

---

[8] The causation standard at the *prima facie* stage is different than that of the pretext stage. *Foster*, 787 F.3d at 251 ("[T]he burden for establishing causation at the *prima facie* stage is 'less onerous.'" (quoting *Williams*, 871 F.2d at 457)).

[9] In her response brief, Plaintiff claims that her problematic statement was actually an attempt "to determine if [another] employee himself might violate the [City's] policy due to [SW's] identification within a federally protected class." Dkt. 31 at 22. But there is no evidence for this proposition. Indeed, Plaintiff's interview with Randy Campbell, the independent investigator, directly contradicts this idea. There, she articulated a different reason for the statements: "I mean, what was said was never meant to be offensive in any way, it was simply that, if there was an issue for them to feel comfortable to come to Captain or I [sic] about it." Dkt. 31 (Ex. 5) at 000727. The Court will, therefore, reject this post hoc explanation for her conduct.

13

[City's] workplace harassment policy." Dkt. 31 at 3. For example, she takes issue with a declaration signed by the firefighter who initially reported her. *See* Dkt. 31 at 8–15. Therein, the firefighter stated, "[Plaintiff's] comments about [the LGBTQ firefighter] *offended* some of [the firefighter's] subordinates." Dkt. 31 (Ex. 6) (emphasis added). However, the firefighter later admitted at her deposition that no subordinate told her that they were offended by Plaintiff's conduct. Dkt. 31 (Ex. 7) 10:21–20:6. Pointing to this statement, Plaintiff opines that "[t]he linchpin evidence in this case appears false on its face." Dkt. 31 at 14. In addition, Plaintiff criticizes the Fire Chief's letter demoting her, arguing that, contrary to the Fire Chief's assertions (Dkt. 31 (Ex. 4)), there is no evidence in the record to "maintain the position that subordinate employees were [both] offended by [her] comments," Dkt. 31 at 14, and believed that her comments were "wrong." *Id.* at 7.

But her criticisms are red herrings. At bottom, it is unclear why either criticism demonstrates "that [Defendants'] reason [for Plaintiff's demotion] was false and that [retaliation] was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (citation omitted). Take the firefighter's "problematic" declaration. That document was not, as Plaintiff insists, "linchpin evidence" in the decision to demote Plaintiff. Dkt. 31 at 14. Instead, it was a record signed months *after* Plaintiff was demoted. Dkt. 31 (Ex. 6). It is simply a bridge too far to claim that any misrepresentation in the declaration—a document "[e]xecuted" in "July[] 2022"—indicates that a November 2021 independent investigation into Plaintiff's misconduct was mere pretext for discriminatory retaliation. Dkt. 31 (Ex. 6).

Plaintiff's critique of the Fire Chief's letter flounders for an additional reason: it is not supported by the record. The Fire Chief based his decision letter "upon th[e] investigation" into Plaintiff's misconduct. Dkt. 31 (Ex. 4) at 000594. And that investigation, contrary to Plaintiff's

14

postulation, found that some employees were *offended* by her comments and felt that they were *wrong*. Dkt. 31 (Ex. 5) at 000749 (emphasis added). For instance, one interviewee stated that Plaintiff's comments made him "pretty upset." *Id.* at 000720. The same individual claimed that her comments were one of "the biggest reason[s] [he] wanted to leave [the station]." *Id.* at 000721. Likewise, a different interviewee recalls Plaintiff's comments striking him and another firefighter as "kind of weird." *Id.* He recounts them saying "something to her like, 'you can't say that or what did you mean kind of thing or something.'" *Id.* Moreover, multiple high-ranking firefighters indicated that Plaintiff's comments were inappropriate. *See, e.g.*, *id.* at 000719 ("There are multiple things [about] that comment that made me feel uncomfortable…"). Plaintiff is, therefore, incorrect that there is no evidence to support the Fire Chief's "position that subordinate employees were [both] offended by [Plaintiff's] comments," Dkt. 31 at 14, and believed them to be "wrong," *id.* at 7.

In short, contrary to Plaintiff's unsubstantiated claim that she "objectively did not commit misconduct," Dkt. 31 at 15 (cleaned up), the independent investigation concluded that she did. Dkt. 31 (Ex. 5) at 000749. And relying on this conclusion, the Fire Chief decided to demote her. Dkt. 31 (Ex. 4) at 000594. Absent evidence that retaliation "was the real reason for" Plaintiff's demotion, *Foster*, 787 F.3d at 252 (citation omitted), it is not the Court's role to judge "whether the [City's decision] was wise, fair, or even correct, ultimately," *Dugan*, 293 F.3d at 722.

At bottom, Plaintiff can point to no evidence—other than unconvincing red herrings—to show that Defendant's independent investigation of her offensive comments was a sham or pretextual. Put differently, there is no dispute of material fact that (1) Defendants produced a legitimate and non-retaliatory basis for Plaintiff's demotion and that (2) Plaintiff has not demonstrated that the investigation was merely a "pretext for discrimination." *Hill*, 354 F.3d at

285. Thus, even "view[ing] the evidence in the light most favorable to" Plaintiff, *Variety Stores, Inc.*, 888 F.3d at 659, Defendants are "entitled to judgment as a matter of law" on Plaintiff's Title VII retaliation claim, Fed. R. Civ. P. 56(a).

## CONCLUSION

For the above reasons, Defendants' summary judgment motion is **GRANTED**. Dkt. 26.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this 7th, day of May, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE